FILED

February 11, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 10:32 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| LAURY NAVYAC, | ) | Docket No. 2015-06-0677 |
| **Employee,** | ) | |
| v. | ) | **State File No. 60024-2015** |
| UNIVERSAL HEALTHCARE | ) | |
| SERVICES, | ) | **Judge Joshua Davis Baker** |
| **Employer.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, Laury Navyac, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether the employer, Universal Healthcare Services (UHS), must provide Ms. Navyac medical care for an alleged work-related injury. The central legal issue is whether Ms. Navyac will likely prevail at a hearing on the merits in proving that her injury arose primarily out of and in the course and scope of her employment for UHS. For the reasons set forth below, the Court finds Ms. Navyac is unlikely to prevail at a hearing on the merits on the issue of compensability.[1]

## History of Claim

Laury Navyac is a forty-five year old resident of Davidson County, Tennessee. Ms. Navyac worked as the Assistant Accounts Receivable Manager for Universal Health Services. UHS and its subsidiaries own and operate more than 235 acute care and behavioral health facilities and surgery centers in thirty-seven states. Ms. Navyac works with these facilities in billing, collections, and end-of-month reconciliations. Ms. Navyac spent most of her time working from the office. Her job duties, however, required her to travel to other locations on some occasions.

UHS supervisors instructed Ms. Navyac to drive to Waverly, Tennessee, on July 28, 2015, where she was to train Natchez Trace Youth Academy (the Academy) staff on UHS' accounting software. She left her home in Brentwood, Tennessee, at 7:00 a.m. in

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

order to arrive at the Academy at 9:00 a.m. to begin training. UHS did not tell her the route to take while traveling to the Academy. Ms. Navyac testified she took the most direct route from her home to the Academy. Ms. Navyac received hourly pay from the time she left her residence in Brentwood until she returned to her home later that evening.

Approximately one hour into her trip, Ms. Navyac exited Interstate 40 at Highway 46 in Dickson and stopped at McDonald's near the interchange for a restroom break. She also purchased breakfast food to go. On her way out of the restaurant, she slipped on a wet floor, injured her ankle and sustained some bruises. Ms. Navyac notified two people in her office of the injury but continued to the Academy where she completed the training. She then returned to her residence.

UHS initially accepted the claim and provided medical care. Ms. Navyac saw Dr. William Dutton at Concentra on July 30, 2015. (Ex. 1, at 1-14). After an examination, he referred her to Dr. David West for an orthopedic evaluation. *Id*. at 15-17. Ms. Navyac saw Dr. West the same day. *Id*. He diagnosed an ankle fracture and recommended surgery. *Id*.

On August 7, 2015, UHS notified Ms. Navyac it denied her claim. Ms. Navyac proceeded with ankle surgery under her personal insurance. *Id*. at 33-35.

Ms. Navyac filed a PBD on August 8, 2015, seeking temporary disability and medical benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on October 26, 2015. (T.R. 2.) Ms. Navyac filed a Request for Expedited Hearing pursuant to Tennessee Code Annotated section 50-6-239 (2015). (T.R. 3.) The Court heard the matter on January 27, 2016.

At the Expedited Hearing, Ms. Navyac acknowledged she received her regular wages during her period of recuperation and no longer sought temporary disability benefits. Additionally, Ms. Navyac stated she continues to receive treatment for her ankle fracture, and the amount of her medical expenses is undetermined.[2]

Ms. Navyac asserted that she was on a special errand, enroute to provide training for a UHS customer, when she stopped at McDonald's to use the restroom and purchase food. Because the travel that brought her to the McDonald's was required by her work, Ms. Navyac argues her injury arose primarily out of and in the course and scope of her employment for UHS.

UHS argued that Ms. Navyac's injury did not occur within the course of her employment because her decision to purchase food at McDonald's converted her restroom stop into an off-premises meal. Because her injury occurred during an off-premises meal, Ms. Navyac's injuries are not compensable.

---

[2] Ms. Navyac did not present medical bills for payment at the Expedited Hearing.

UHS further argued Ms. Navyac's injuries arose outside the scope of her employment. Although scope is not specifically defined, UHS argues that the inclusion of the term in Tennessee Code Annotated section 50-6-102(14)(B) cannot be ignored. UHS claims the scope of Ms. Navyac's work for UHS did not include stopping at McDonald's to use the restroom and purchase food.

## Findings of Fact and Conclusions of Law

The central dispute concerns whether Ms. Navyac's injuries at McDonald's arose primarily out of and in the course and scope of her employment for UHS. "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(14)(B) (2015). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn. 1992). "An injury occurs in the course of employment if 'it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto.'" *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 534 (Tenn. 2006) (citing *Blankenship v. Am. Ordnance Sys., LLC*, 164 S.W.3d 350, 354 (Tenn. 2005)).

The Court finds Ms. Navyac's injuries occurred in the course of her employment. Her travel to the Academy furthered the interest of her employer. Despite the inclusion of this duty in her job description, Ms. Navyac testified that travel constituted only five percent of her workplace duties. Furthermore, UHS paid Ms. Navyac wages for the time spent traveling to the Academy. UHS normally did not pay Ms. Navyac wages for the time spent traveling to work. For these reasons, the Court finds Ms. Navyac's activities fell outside the purview of her normal business activities yet furthered UHS' business interests. Accordingly, the Court finds her activity in traveling to the Academy qualified as a special errand undertaken in the course of her employment.[3]

Even if traveling to the Academy fell within the course of her employment, UHS argued that Ms. Navyac's meal purchase took her out of it. It cited *Greenfield v. Manufacturers Cas. Co.*, 281 S.W.2d 47 (Tenn. 1955) in support of this argument. In *Greenfield*, the Supreme Court ruled the employee's injury incurred while traveling from her work for an evening meal noncompensable. *Id.* This Court disagrees that *Greenfield*

---

[3] The Court could have also found that Ms. Navyac's activities constituted work in the normal course of her regular job duties because she was on the clock when the accident occurred and travel is listed as part of her work duties. The Court designated her activities a special errand because UHS normally did not pay her for driving to work.

3

applies. Instead, the Court finds Ms. Navyac's brief actions were more akin to a comfort break incidental to her work than an off-premises meal. The Supreme Court cited to Professor Larson to address the issue of "comfort breaks":

> [E]mployees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred or unless the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment. 1A Larson, Workmen's Compensation Law, § 21 (1990).

*Carter v. Volunteer Apparel, Inc.*, 833 S.W.2d 492, 495 (Tenn. 2002).

Here, Ms. Navyac stopped at McDonald's to use the restroom and purchased food secondarily. Ms. Navyac was in the course of her employment when she entered the restaurant to use the restroom. She was on the way to another facility to provide training at the direction of her supervisor and stopping to use the restroom is an act incidental to her travel that falls within the purview of the workers' compensation coverage formula. Likewise, the Court finds the brief deviation from her path to and from the restroom to purchase food did not remove her from the course of her employment for UHS. Ms. Navyac did not eat the food at McDonald's and made her way toward the exit directly after purchasing it intending to eat her meal while completing her journey to the Academy.

UHS next argues that Ms. Navyac's injury did not occur within the scope of her employment. Although the phrase "course and scope of employment" appears often in workers' compensation jurisprudence, the general assembly only recently added the term "scope" to the statutory definition of injury. Accordingly, there is little Tennessee case law concerning its meaning in this context. The central focus when construing any statute is to "ascertain and give effect to the intention or purpose of the legislature as expressed in the statute." *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007) (citing *State ex rel. Rector v. Wilkes*, 436 S.W.2d 425, 427 (Tenn. 1968)). To that end, unless the language is ambiguous, the Court must derive legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *Id*., *citing State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). Merriam Webster's defines "scope" as "space or opportunity for unhampered, motion, activity, or thought" or "extent of treatment, activity, or influence[.]"[4] By applying this definition, the court finds that scope as used in the context of Tennessee Code Annotated section 50-6-102(14)(B) means the extent of activity normally associated with work.

---

[4] *See* Merriam Webster Dictionary, http://www.merriam-webster.com/dictionary/scope.

With the above definition of scope in mind, the Court finds that Ms. Navyacs' trip to the restroom and brief stop to purchase food fell within the scope of her employment. Restroom breaks are in integral part of work and UHS certainly knew that Ms. Navyac may need to stop and use the restroom during her trip to the Academy. As she was travelling in furtherance of UHS' business interest, the location of her stop made no difference unless the choice of facilities exposed her to unreasonable risk.

The last, and in the opinion of this Court, most significant issue is whether Ms. Navyac's injury "arose primarily out of her employment." *See* Tenn. Code Ann. § 50-6-102(14)(B) (2015). As stated previously in this order, for an injury to arise primarily out of and in the course and scope of employment, the employment must have "contributed more than fifty percent (50%) in causing the injury, considering all causes." *Id*.

Here, there is no doubt that water on the floor of McDonald's caused Ms. Navyac to slip and fall. The parties also agree Ms. Navyac injured her ankle in the fall. Neither UHS nor anyone associated with it put the water on the floor. Additionally, UHS did not require Ms. Navyac to stop at that McDonald's to use the restroom, but could certainly foresee that she would stop to use the restroom. Ms. Navyac voluntarily chose to stop at McDonald's because she believed the restrooms would be clean.

At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2015); *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Although it is a close issue, the Court finds Ms. Navyac is unlikely to prevail at a hearing on the merits in proving her injury arose primarily out of her employment. Although her stop at McDonald's occurred within the course and scope of her employment and exposed her to the risk associated with the stop, it was the wet McDonald's floor, rather than her mere presence in the restaurant, that contributed more than fifty percent in causing her to slip and fall.

Therefore, as a matter of law, Ms. Navyac has not come forward with sufficient evidence from which this Court concludes that she is likely to prevail at a hearing on the merits. Her claim is denied on compensability grounds.

IT IS, THERFORE, ORDERED THAT:

1. Ms. Navyac's claim against UHS and its workers' compensation carrier for the requested medical benefits is denied at this time.

2. This matter is set for an Initial (Scheduling) Hearing on March 21, 2016, at 9:30

a.m. (CDT).

**ENTERED this the 11th day of February, 2016.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

Initial Hearing:

A Scheduling Hearing has been set with **Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is

6

practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

<u>Exhibits:</u>

1. Medical records[5]
2. Affidavit of Laury Navyac
3. Job description

<u>Technical record:</u>[6]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Deposition of Laury Navyac
5. Pre-hearing Order

---

[5] Ms. Navyac did not enter the medical bills originally submitted with this exhibit into evidence.

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the _11th_ day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| William B. Hicky | | | X | will@hickylaw.com |
| Gregory H. Fuller | | | X | ghfuller@mijs.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9